# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CASE NO. 1:22-CR-234** |
| Plaintiff, | |
| -vs- | |
| | **JUDGE PAMELA A. BARKER** |
| **KEVIN WILLIE CARTER,** | |
| Defendant. | **MEMORANDUM OPINION & ORDER** |

This matter is before the Court upon Defendant Kevin Willie Carter's ("Defendant" or "Carter") Motion to Suppress Evidence Seized as the Result of an Illegal Search and Seizure filed on June 16, 2024 ("Defendant's Motion"). (Doc. No. 455.) On July 9, 2024 the United States of America filed the Government's Response in Opposition to Defendant's Motion ("the Government's Response"). (Doc. No. 467.) A hearing on Defendant's Motion was conducted on August 15, 2024, during which the Court denied, for the reasons stated on the record, that portion of Defendant's Motion requesting a *Franks* hearing. Counsel for the parties requested that they be permitted to file supplemental briefing on the issue of whether Defendant had standing to challenge the search warrant as to Target Location-4, and their request was granted. On August 29, 2024, the deadline imposed by the Court for filing the supplemental briefing, the Government filed its Supplemental Briefing to Defendant's Motion to Suppress ("the Government's Supplement"), and Defendant filed his Supplemental Brief to Defendant's Motion to Suppress Evidence ("Defendant's Supplement"). (Doc. Nos. 491, 493.) For the reasons set forth below, Defendant's Motion is DENIED.

I. **BACKGROUND**

On November 17, 2021 Special Agent Williams Gonzalez ("Gonzalez") from the Federal Bureau of Investigation ("FBI") submitted an application for a search warrant for seven (7) locations, along with his Affidavit ("Affidavit"), to Magistrate Judge Greenberg, who approved the search warrant. On November 18, 2021, the following seven premises were searched by law enforcement officers, pursuant to the approved search warrant: 19418 Meadowlark Lane, Warrensville Heights, Ohio ("Target Location-1"); 15913 Turney Road, Maple Heights, Ohio ("Target-Location-2"); 3038 West 115th Street, Cleveland, Ohio ("Target Location-3"); 5255 (Upper Unit) Warrensville Center Road, Maple Heights, Ohio ("Target Location-4"); 5156 Warrensville Center Road, Maples Heights, Ohio ("Target Location-5"); 1512/1514 West 116th Street Unit 1, Cleveland, Ohio ("Target Location-6"); and 15612 Benhoff Drive, Maple Heights, Ohio ("Target Location-7").

In Defendant's Motion, Defendant only challenges the searches of Target Locations 1, 2, 3 and 4.[1] At the hearing on Defendant's Motion, defense counsel conceded that Defendant lacks standing to challenge the search of Target Locations 2 and 3. And, defense counsel did not oppose the Government's argument that Defendant also lacks standing to challenge the searches of Target Locations 5, 6 and 7.[2] The Government acknowledged that because Target Location-1 is Carter's residence, Carter has standing to challenge the search of that premises. Thus, as to the issue of

---

[1] In the Government's Response, the Government correctly asserts that "[e]xcept for the inclusion of Target Locations 5, 6 and 7 in Carter's Statement of Facts, none of these locations are discussed and challenged in Carter's motion to suppress arguments." (Doc. No. 467, PageID #s 2954.)

[2] In the Government's Response, the Government argued that because Carter had no ownership or rental interest in or connection to and was not an overnight guest at Target Locations 5, 6 and 7, Carter does not have standing to challenge the search of these premises. (*Id.*, PageID #s 2954-55.) At the hearing, defense counsel conceded as much, arguing only that Carter has standing to challenge the search of his residence, Target Location-1, and Target Location-4 (which is the subject of the parties' supplemental briefing).

2

standing to challenge the searches, the Government and Defendant disagree only on whether Carter has standing to challenge the search of Target Location-4.

### II. ARGUMENTS AND ANALYSIS

#### A. Standing to Challenge the Search of Target Location-4.

Carter asserts that because he used the premises as a music studio and exerted control over the premises by using a keypad which was required to gain access, he has standing to challenge the search of Target Location-4."[3] (Doc. No. 493, PageID # 2435.) The Government asserts that during the hearing no evidence was adduced demonstrating that Target Location-4 was a residence, nor that Carter or anyone was an overnight guest there, nor that Carter had any lease to be on the property for any legitimate purpose. (Doc. No. 491, PageID # 3427.) And, while acknowledging that the Affidavit included information learned through investigators' surveillance and/or intercepted calls that Carter provided the keypad code to other members of the drug trafficking organization and drug customers, and recorded music there, the Government contends that the Affidavit does not include any allegation of a possessory interest to Target Location-4 held by Carter. (*Id.*) Accordingly, per the Government, Defendant lacks standing to challenge the search of Target Location-4.

---

[3] Defendant cites to the warrant Affidavit of Gonzalez marked and admitted as Government's Exhibit 1 at the hearing, specifically paragraph 65, wherein Gonzalez averred as follows. "Your Affiant is aware that **TARGET LOCATION-4** is commercial building (plaza) with several store fronts. During CARTER's drug activities, CARTER described a cell phone store nearby **TARGET LOCATION-4**. Your Affiant is aware that located at the end of the plaza is a Metro by T-Mobile store with an address of 5255 Warrensville Center Road, Maple Hts., Ohio. On the south side of the Metro store front is an entrance that leads to a studio that CARTER has been observed selling drugs from, as outlined below. The door has a keypad affixed to it for DTO members to gain entry and investigators have intercepted T-III calls in which CARTER provided the code to the keypad. There is no visible address for this studio, therefore investigators utilized Metro's address due to CARTER providing it several times to drug customers. Investigators were unable to locate any business records or address for the studio. Intercepted T-III calls indicated CARTER records music at the studio and sells drugs from the studio, as outlined below."

3

"[T]o claim Fourth Amendment protection, a defendant must demonstrate that he personally has an expectation of privacy in the place searched and that his expectation is reasonable." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998), citing *Rakas v. Illinois*, 439 U.S. 128, 143-44. Defendant bears the burden to show a legitimate privacy interest in the place searched. *United States v. Whitehead*, 415 F.3d 583, 587 (6th Cir. 2005). "And an expectation of privacy in commercial property is different from, and less than, a similar expectation in a home." *Minnesota v. Carter*, at 83-84, citing *New York v. Burger*, 482 U.S. 691, 700 (1987). In determining the "central inquiry" as to whether the defendant has a legitimate expectation of privacy in the place searched, courts must consider whether, by the defendant's conduct he has exhibited an actual expectation of privacy, i.e., "whether he has shown that he sought to preserve something as private." *United States v. King*, 227 F.3d 732, 743 (6th Cir. 2000). Then, courts must consider "whether the individual's expectation of privacy is one that society is prepared to recognize as reasonable." *Id.*, citing *Bond v. United States*, 120 S.Ct. 1462, 1465 (2000) (citation, internal quotation marks, and alterations omitted).

In determining whether the defendant has a legitimate expectation of privacy in the place searched, courts consider a number of factors: "the person's proprietary or possessory interest in the place" searched; "whether the defendant has the right to exclude others from the place in question; whether he had taken normal precautions to maintain his privacy; whether he has exhibited a subjective expectation that the area would remain free from government intrusion; and whether he was legitimately on the premises." *King* at 744.

The Government is correct in asserting that the evidence, specifically the Affidavit, demonstrates that "no business records were located for Carter regarding the property or Target

Location-4."[4]  And, Carter has not produced any records or documents demonstrating that he had any ownership or proprietary interest in Target Location-4.  But ownership or a proprietary interest is not required to establish standing.  As the Sixth Circuit has explained "[a]lthough the most obvious among the factors is the person's proprietary or possessory interest in the place to be searched ***, a property right alone is not determinative of whether the individual reasonably expected 'freedom from governmental intrusion.'" *United States v. King*, *Id.* at 744, citing and quoting from *Mancusi v. DeForte*, 392 U.S. 364, 368 (1968).  *See Mancusi v. DeForte*, *id.* at 372, citing *Jones v. United States*, 362 U.S. 257, 267 (holding that "anyone legitimately on premises where a search occurs may challenge its legality *** when its fruits are proposed to be used against him."); and *Katz v. United States*, 389 U.S. 347, 352 (the capacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the area was one in which there was a reasonable expectation of freedom from governmental intrusion).

In the instant matter, there is some evidence in the form of the Affidavit that Carter had a possessory interest in the commercial space of Target Location-4, since he had and used a code for a keypad to enter, gave that code to others for entry, and used the premises as what he referred to as his "studio" to record music.  (Affidavit at ¶¶ 65, 77, 88, 90.)  There is also evidence adduced from the Affidavit that Carter was seen, and directed others to come to meet him, at Target Location-4 many times.  (Affidavit, ¶¶ 66, 67, 69, 70, 71, 72, 76, 77, 78, 79, 8081  So, the first factor weighs in favor of Carter having an expectation of privacy at Target Location-4.

---

[4] According to the Affidavit, "investigators were unable to locate any business records or address for the studio." (Affidavit, ¶ 65.)

5

As to the second factor, whether Carter had "the right to exclude others" from Target Location-4, the Court notes that there was a code that had to be entered into the keypad to make entry into Target Location-4 and Carter had the code and provided it to others. So, to the extent Carter did not provide the code to others, he had the opportunity to exclude them. But whether Carter had the "right" to exclude them, as distinguished from the opportunity to do so, is questionable. This factor is neutral.

As to the third factor, whether Carter had taken normal precautions to maintain his privacy, the evidence demonstrates that there was no specific address for the studio or Target Location-4 so Carter described a phone cell store at the end of the plaza, i.e., Metro by T-Mobile with an address of 5255 Warrensville Center Road, to assist those individuals he invited to come to see him at Target Location-4; and Carter had the code for the keypad and gave it to others that he had invited or asked to come to that location. There is nothing in the Affidavit indicating that investigators saw individuals other than those that were identified in the Affidavit as part of the drug trafficking organization and drug customers going to and gaining access into Target Location-4. This factor weighs in favor of Carter having an expectation of privacy in Target Location-4.

Evidence that Carter exhibited a subjective expectation that the area would remain free from government intrusion consists of information set forth in the Affidavit: investigators overheard communications between Carter and others identified as part of the drug trafficking organization or customers of it that they interpreted as arranging for drug transactions at, or taking drugs to or from, Target Location-4, indicating that he had drugs there; and Carter calling the location his studio and mentioning recording music there, indicating that he had recording devices or equipment there. The

Court construes this evidence as demonstrating that Carter did exhibit a subjective expectation of freedom from government intrusion at Target Location-4.

As to the fifth factor, Carter has not demonstrated that he was *legitimately* on the premises. Carter has not produced any evidence identifying himself as having any ownership, proprietary, or tenancy interest in Target Location-4, or any evidence identifying the owner or lessor of the property or anyone else having a proprietary interest in Target Location-4 who gave him permission to be there, use the premises, have the keypad code and give it to others. This factor weighs against Carter having an expectation of privacy in Target Location-4.

With three factors weighing in favor of, one factor being neutral and one factor weighing against a finding that Carter had a legitimate expectation of privacy in Target Location-4 the Court finds that Carter did have a legitimate expectation of privacy in Target Location-4 and this expectation is one which would be recognized by society. The fact that Carter may have committed criminal acts while at Target Location-4 is not dispositive of the standing issue. Indeed, "the use of space for illegal activity does not alter the privacy expectations of a person who would otherwise have standing." *United States v. Washington*, 573 F.3d 279, 286 (6th Cir. 2009). *See*, *also United States v. Trammell*, 52 Fed.Appx.a 661, 664 (6th Cir. 2002) (co-defendant did not have standing where he had never been an overnight guest, kept clothes there, or done anything on the premises "other than pursue his drug-trafficking career"); *United States v. Jordan*, 417 Supp.3d 950 (N.D. Ohio Oct. 21, 2019); and *United States v. Bell*, No. 1:17-CR-336, 2018 WL 1173033, at *3 (N.D. Ohio Mar. 6, 2018) (where because the warrant Affidavit upon which the defendant relied to attempt to establish standing included only the opinion that a certain apartment was used "to store narcotics and/or narcotics proceeds," and did not "offer any other possible uses for the apartment[]" the court

7

concluded that the defendant did not have standing; and posited that "[h]ad the Affidavit, for instance, averred that Bell lawfully resided or visited the property, the fact that the property was also used for criminal activity would not defeat his standing." (*Id.*))  Here, by contrast, the warrant Affidavit upon which Defendant chose to rely to demonstrate standing does include an opinion or averment that Carter used Target Location-4 as a studio to record music, in addition to his use of the premises for drug trafficking.

Moreover, the Supreme Court's decision in *Minnesota v. Carter*, 119 S.Ct. 469 (1998), cited and relied upon by the Government, does not dictate otherwise.  In *Carter*, the Court found that the defendants/respondents had no standing to challenge the actions of the police officer in looking into an apartment window through a gap in the closed blind and observing the defendants/respondents bagging cocaine therein.  The Court found that the defendants/respondents had no legitimate expectation of privacy in the apartment given "the purely commercial nature of the transaction, the relatively short period of time that respondents were on the premises, and the lack of any previous connection between them and the householder." *Id.* at 471.  Instead, the Court found that these facts lead to the conclusion that "their situation is closer to that of one simply permitted on the premises." (*Id.*)  The facts of the instant matter are distinguishable from *Carter*.

For the reasons set forth above, this Court finds that Carter does have standing to challenge the search of Target Location-4.

**B. Motion to Suppress evidence seized from Target Location-1 and Target Location-4**

Defendant makes two arguments as to why the evidence seized from Target Location-1, Carter's residence, should be suppressed.  The first is that the Affidavit failed to show an evidentiary nexus adequate to establish probable cause that contraband or evidence of a crime would be found

there ("Nexus argument"). The second is that the warrant was based upon stale information, such that probable cause did not exist at the time that the warrant was signed ("Staleness argument"). Defendant makes two arguments as to why the evidence seized from Target Location-4 should be suppressed. Defendant contends that: the Affidavit lacked probable cause to link evidence of illegal activity there ("Nexus argument"); and investigators failed to verify the address belonging to the "studio," or did not describe the premises with sufficient particularity, thereby rendering the warrant facially invalid ("Sufficient particularity argument").

### 1. Nexus argument as to Target Location-1 and Target Location-4

Defendant argues that the search of 19418 Meadlowlark Lane (Target Location-1), identified in the Affidavit as Carter's primary residence, and 5255 Warrensville Center Road (Target Location-4) identified in the Affidavit as Carter's "studio" were authorized despite law enforcement agents never witnessing any illegal activity at these locations. Defendant submits that the authorization of the warrant was based solely upon law enforcement's monitoring and interpretations of the telephone calls allegedly made or received by Carter, and the calls' contents set forth in the Affidavit fail to establish probable cause for a search of these locations.

In response, the Government cites to the Affidavit evidencing the fact that Target Location-1 is Carter's residence (and that of co-defendant Antonesha Dixon ("Dixon")[5] and outlining investigators' interceptions of the following communications: two telephone calls by and between Carter and unknown males;[6] one telephone call by and between Carter and co-defendant Brianna Bernard ("Bernard"), involved in the drug trafficking organization and her home address being Target

---

[5] Affidavit, at ¶ 16, p. 7.
[6] The intercepted telephone calls between Carter and unknown males occurred on October 3, 2021 and October 4, 2021. Affidavit, at ¶¶ 17, 18, pgs. 7-9.

9

Location-2;[7] one telephone call by and between Carter and co-defendant Michael Pedicini ("Pedicini"), involved in the drug trafficking organization;[8] one telephone call by and between Carter and an unknown female;[9] and five telephone calls by and between Carter and Dixon.[10]  Based upon the intercepted telephone calls, and precise location data for known telephone numbers for Carter,[11] and surveillance of Target Location-1 and Target Location-4, Gonzalez averred that he believed that Carter stores and sells drugs at Target Location-1.[12]  Indeed, importantly, the content of the intercepted telephone calls between Carter and Dixon gave Gonzalez reason to believe that Carter directed Dixon to retrieve drugs from Target Location-1 and transport them to Carter.[13]

And, as the Government contends, the Affidavit also sets forth averments regarding additional telephone conversations intercepted by investigators, surveillance of other target locations, to include Target Location-4, and precise location data associated with Carter and his co-defendants or members of the drug trafficking organization demonstrating that Carter's drug trafficking activities were ongoing at the time the warrant of Target Location-1 was executed.[14]  Specifically, precise location data showed that up until November 15, 2021, Carter had been placed in the area of Target Location-4 then placed immediately at Target Location-1 after departing from Target Location-4 and

---

[7] The intercepted telephone call between Carter and Bernard occurred on October 7, 2021.  Affidavit, at ¶ 20, pgs. 10-11.  Affidavit, at ¶ 30.
[8] The intercepted telephone call between Carter and Pedicini occurred on October 7, 2021.  Affidavit, at ¶ 21, p. 11.
[9] The intercepted telephone call between Carter and the unknown female occurred on October 12, 2021.  Affidavit, at ¶ 23.
[10] The intercepted telephone calls between Carter and Dixon occurred on October 12, 14, and 15, 19, 20, and 26, 2021.  Affidavit, at ¶¶ 22, 24, 25, 26, 27, 28, pgs. 12-16.
[11] There are three known telephone numbers for Carter set forth in the Affidavit and referred to therein as TT-4. TT-10 and TT-11.  Affidavit, at ¶ 14, pgs. 6-7.
[12] Affidavit, at ¶ 29, p. 16.
[13] *Id*.
[14] Defendant acknowledges that during the search of Target Location-1, law enforcement discovered quantities of narcotics including cocaine and crack cocaine, heroin, and fentanyl, as well as a firearm. (Doc. No. 455, PageID # 2811.)

surveillance showed Carter entering Target Location-1 with a backpack numerous times after conducting drug deals at Target Location-4.[15] Moreover, the Affidavit included an averment that just a week beforehand, on November 8, 2021 Bryson had purchased 89 grams of marijuana from Carter at Target Location-4 before being pulled over by law enforcement for a dark window tint and driving without a license.[16]

The Fourth Amendment provides that "no [w]arrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "[P]robable cause exists when an affidavit shows a 'fair probability' that criminal evidence will be found in the place to be searched." *United States v. Moore*, 999 F.3d 993, 996 (6th Cir. 2021).

Additionally, "a probable-cause 'nexus' must connect these two together: [t]here must be a fair probability that the specific place that officers want to search will contain the specific things that they are looking for." *United States v. Reed*, 993 F.3d 441, 447 (6th Cir. 2021). Law enforcement can infer a nexus from "the type of crime being investigated, the nature of things to be seized, and the extent of an opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places." *United States v. Elbe*, 774 F.3d 885, 890 (6th Cir. 2014) (citation omitted).

When applying the probable cause standard, "the [issuing] magistrate [judge] uses a practical standard, based on factual and practical considerations of everyday life, rather than a technical

---

[15] Affidavit, at ¶ 29, p. 16. Indeed, Defendant acknowledges that when Target Location-4 was searched by law enforcement on November 18, 2021 or just three days after investigators learned that Carter left Target Location-4 and traveled to Target Location-1, they found a firearm, narcotics, and other items alleged to have been used in the drug trade. (Doc. No. 455, PageID # 2814.)
[16] Affidavit, at ¶¶ 84-87, pgs. 46-47.

standard." *United States v. Sneed*, 385 F. App'x 551, 556 (6th Cir. 2010) (citing *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010)).  Courts should "accord the magistrate [judge]'s determination" of probable cause "great deference." *United States v. Kinison*, 710 F.3d 678, 682 (6th Cir. 2013) (quoting *United States v. Terry*, 522 F.3d 645, 647 (6th Cir. 2008)).  The question is "whether the magistrate [judge] had a substantial basis for his conclusion" that probable cause existed.  *United States v. Christian*, 925 F.3d 305, 310 (6th Cir. 2019).

In *Reed*, 993 F.3d at 447-49, the Sixth Circuit explained the "competing concerns" that nexus problems implicate.  In a later unpublished case, the Sixth Circuit distilled *Reed's* guiding factors into the following:

> First, "obviously, a court need not rely on a known drug dealer's status alone whenever other evidence (besides the dealer's living there) links drug dealing to the dealer's home." *Reed*, 993 F.3d at 448 (emphasis in original).  Further, "[e]ven if no specific evidence ties drug dealing to a home, we have also called it 'well established' that a nexus to search the home can exist if a suspect's drug dealing is 'ongoing' at the time the police seek the warrant." *Id*.  As this Court later stated, continual operations typically involve "large amounts of drugs," though the "caselaw 'leaves unclear the amount of drug activity required to invoke this nexus principle.'" [*United States v.*] *Sheckles*, 996 F.3d [330,] 342 [6th Cir. 2021] (quoting *Reed*, 993 F.3d at 451).

*Pointer*, 2022 U.S. App. LEXIS 35506 at *12.

"Probable cause does not require that the crime occurred at the location of the search, only a fair probability that evidence of the crime will be found there. *United States v. Johnson*, 2023 U.S. App. LEXIS 21417 at *5 (6th Cir. Aug. 14, 2023) (citing *United States v. Williams*, 544 F.3d 683, 686-87 (6th Cir. 2008)).

Here, as explained more fully above, Carter's drug dealing was "ongoing" at the time investigators sought the warrant on November 17, 2021 and there is more than Defendant's status as a drug dealer alone to link his criminal activity to his apartment and studio, i.e., Target Location-1

and Target Location-4. And the information set forth in the Affidavit demonstrates that there was a fair probability that evidence of drug trafficking crimes would be found at Target Location-1 and Target Location-4.

Accordingly, the Affidavit demonstrated that there was a substantial basis for the magistrate judge to find probable cause that evidence of drug trafficking would be found at Target Location-1 and Target Location-4.

### 2. **Staleness argument as to Target Location-1**

This same evidence of ongoing drug activity also shows that the probable-cause nexus associated with Target Location-1 was not stale. *See United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006) ("The passage of time becomes less significant when the crime at issue is ongoing or continuous and the place to be searched is a secure operational base for the crime.")

Stale information cannot support probable cause. *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998). "But information is not stale merely because some time has passed since the relevant events occurred." *United States v. Pointer*, 2022 U.S. App. LEXIS 35506 at *19 (6th Cir. Dec. 20, 2022). Rather, courts should look to the following factors to determine whether the information is too stale to support probable cause:

> (1) the character of the crime (chance encounter in the night or regenerating conspiracy?) (2) the criminal (nomadic or entrenched?) (3) the thing to be seized (perishable and easily transferrable or of enduring utility to its holder?) (4) the place to be searched (mere criminal forum of convenience or secure operational base?).

*Id*. (quoting *United States v. Abboud*, 438 F.3d 554, 572-73 (6th Cir. 2006)). In the drug trafficking context, "staleness concerns are lessened where there is 'information indicating an ongoing and continuing narcotic operation.'" *Id*. (quoting *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir.

2009). Having evaluated these factors, the Court finds that the information was not too stale to support probable cause.

Defendant argues that because the most recent telephone call between Carter and Dixon identified in paragraph 28 of the Affidavit that related to Target Location-1 occurred on October 26, 2021, the information in the Affidavit was stale. But the Affidavit indicates that as late as November 15, 2021 Carter left Target Location-4 after conducting drug trafficking activities there and proceeded to Target Location-1 with a back pack. The more recent November 15, 2021 information, or two days before the warrant was requested and three days before it was executed included in paragraph 29 of the Affidavit corroborates the information set forth in paragraph 28 of the Affidavit. *See United States v. Henson*, 848 F.2d 1374, 1381-82 (6th Cir. 1988) (citation omitted) ("Where recent information corroborates otherwise stale information, probable cause may be found."). Accordingly, the magistrate judge had a substantial basis for his conclusion that probable cause existed to search Defendant's residence or Target Location-1.

### 3. Sufficient particularity argument as to Target Location-4.

The "test for determining whether a search warrant described the premises to be searched with sufficient particularity" is "whether the description is sufficient 'to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premises might be mistakenly searched." *United States v. Durk*, 149 F3d 464, 465 (6th Cir. 1998) (quoting *United States v. Gahagan*, 865 F.2d 1490, 1496 (6th Cir. 1989)). This Court's review of that portion of the Affidavit describing Target Location-4 and averring that the studio did not have a visible address, that Carter had provided the key code to others and described it to customers by using Metro's address of 5255 Warrensville Center Road and that investigators

were unable to locate any business records or an address for it demonstrates to the Court that Target Location-4 was described with sufficient particularity.[17]  And, although Defendant asserts that "it appears as though there are at least four units in the upstairs floor of this premises," he does not offer any evidence for this assertion.  (Doc. No. 455, PageID # 2821.)  Accordingly, the Court finds that the description was sufficient "to enable the executing officer to locate and identify the premises with reasonable effort" and left no "reasonable probability that another premise might be mistakenly searched."  *Durk*, 149 F.3d at 465 (quoting *Gahagan*, 865 F.2d at 1496.)

For the reasons set forth above, Defendant's Motion is DENIED.

**IT IS SO ORDERED.**

Date:  October 7, 2024

  *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE

---

[17] Affidavit, at ¶ 65, p. 38.